**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **PRESTIGE FORD-LINCOLN-** | ) | **CASE NO. 09-71721** |
| **MERCURY, INC.** | ) | |
| | ) | |
|     **Debtor.** | ) | |

| | | |
|---|---|---|
| **PRESTIGE FORD-LINCOLN-** | ) | |
| **MERCURY, INC.** | ) | |
| | ) | |
|     **Movant,** | ) | **MOTION FOR ENTRY OF AN ORDER** |
| | ) | **COMPELLING THE TURNOVER OF** |
| **v.** | ) | **PROPERTY OF THE ESTATE** |
| | ) | |
| **CANTRELL AUTO SALES, INC.** | ) | |
| | ) | |
|     **Respondent.** | ) | |

## MEMORANDUM DECISION

The matter before the Court is the Debtor's Motion for Entry of an Order Compelling the Turnover of Property of the Estate, specifically seeking to compel Cantrell Auto Sales, Inc. (hereafter referred to as "Cantrell") to turnover vehicle titles belonging to the estate pursuant to 11 U.S.C. § 542(a). Cantrell filed an answer and objection thereto. An evidentiary hearing was held on October 21, 2009, final arguments were presented on October 26, 2009 and the matter was taken under advisement at that time. For the reasons set forth below, the Debtor's Motion is granted subject to the condition noted below.

FINDINGS OF FACT

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 8, 2009. On October 5, 2009, the Debtor filed the instant Motion

seeking to compel Cantrell to turn over title to a 2009 Ford Mustang and a 2009 Dodge Ram pickup.[1]  Cantrell filed its response and objection thereto on October 20, 2009 denying that Prestige is entitled to such relief.  On that same date, the parties also filed a Stipulation of Facts stipulating to the following facts:  Both Prestige and Cantrell were in the business of selling used cars.  Prestige offered to purchase and Cantrell offered to sell Prestige a Dodge truck and agreed upon a price therefore.  Prestige requested and was provided with a photocopy of the title to the truck to obtain financing for the purchase of the truck and was given permission to take the truck to Prestige to prepare it for sale and show to prospective purchasers.  Cantrell owned the truck free and clear of any encumbrances.  William M. Stinson and Connie S. Stinson purchased the truck in good faith, reasonably believed they were purchasing the truck from Prestige and were without knowledge that their purchase of the truck may violate the rights of Cantrell or any other person.  The sale to the Stinsons appeared, at least from their perspective, to be in accordance with ordinary business practices of Prestige.  Mr. and Mrs. Stinson had no knowledge that Cantrell owned the truck and did not see the title to the truck prior to the conclusion of the transaction with Prestige.  After learning that Prestige had sold the truck without paying the agreed upon purchase price to Cantrell Motors, it filed a civil action against Prestige in the Circuit Court of Tazewell County, Virginia alleging that the latter had purchased the truck from Cantrell but had not paid for it and such failure constituted breach of contract, conversion and fraud.  Upon the filing of its petition in this Court Prestige scheduled a claim in favor of Cantrell on Schedule F in the amount of the purchase price which Cantrell had offered to sell the truck to

---

[1] According to its Answer, Cantrell voluntarily surrendered the Certificate of Title to the 2009 Ford Mustang to Prestige, so the Debtor is currently only seeking turn over of the title to the truck.

Prestige, which was $20,800.

To the extent that it is a mixed question of fact and law, this Court finds that under both the stipulated facts and testimony of Mr. Cantrell he entrusted possession of the Dodge truck to a representative of Prestige, which he knew to be a licensed motor vehicle dealer which regularly sold used motor vehicles in the ordinary course of its business to members of the public, on the agreement that he would continue to hold actual possession of the certificate of title to the truck until receiving payment of the agreed purchase price.

CONTENTIONS OF THE PARTIES

At the hearing on October 21, 2009, a Complaint filed by Cantrell against Prestige in the Circuit Court of Tazewell County was entered into evidence. In that Complaint, Cantrell alleged that Prestige retains unlawful possession of the Dodge truck[2] and that Prestige sold the vehicle but is unable to provide good title to the purchaser because Cantrell has retained possession of the title to this vehicle until it receives payment.

Mr. Henry Cantrell, the owner and operator of Cantrell Auto Sales, testified at the hearing as to the relationship that existed between Cantrell and Prestige. Under a previous arrangement, Cantrell would give Prestige possession of the title, bill of sale and the vehicle and Prestige promised Cantrell that it would be paid as soon as Prestige obtained the purchase price funds from the sale of the vehicle, usually a day or two later. Apparently this relationship

---

[2] This Complaint refers to a 2008 Dodge Ram truck. However, the instant Motion and the Answer thereto refer to a 2009 Dodge Ram truck with the same VIN number as referenced in the Complaint. The parties' Stipulation does not specifically reference the model year of the Dodge truck.

changed after Cantrell was not paid for a vehicle that Prestige sold in this manner and Mr. Cantrell stopped allowing Prestige to take a vehicle to sell to a prospective purchaser without paying for it first. Mr. Cantrell testified that he did not tell the Prestige representative that he could sell the truck in question, but only allowed him to take the vehicle off of the lot to show it to a prospective purchaser. According to Mr. Cantrell, he and the Prestige representative agreed that Cantrell would keep the title to the vehicle until he was paid for the truck. Mr. Cantrell still retains possession of the title to the vehicle because he has not yet been paid.

In its Memorandum of Law in support of the Motion filed on October 22, 2009, Prestige asserts that Mr. and Mrs. Stinson purchased the truck free and clear of any interest of Cantrell and that Cantrell is obligated to turn over title to the truck to Prestige under any of three separate scenarios. Under the first scenario, Prestige asserts that Cantrell sold the truck to Prestige, retaining the title in order to secure payment. The Debtor asserts that in order to obtain a perfected security interest in the inventory of an automobile dealer, a secured party must file a financing statement under Va. Code Ann. §§ 8.9A-310, 8.9A-311(d), 46.2-637 and 46.2-638. However, the interest of a bankruptcy trustee or debtor-in-possession is superior to that of an unperfected secured party pursuant to 11 U.S.C. § 544. Therefore, Prestige's interest in the truck is superior to Cantrell's. Even if Cantrell had perfected a security interest in the truck, Mr. and Mrs. Stinson would still own the truck free and clear of any interest of Cantrell because the Stinsons purchased the truck in the ordinary course of Prestige's business. Under Va. Code Ann. § 8.9A-320(a), a buyer in the ordinary course of business takes free of any security interest Cantrell may have had in the truck and the Stinsons meet the definition of "buyer in the ordinary course of business" under § 8.1A-201(b)(9). Prestige further asserts that whether the truck was

sold under the same arrangements as prior transactions between Prestige and Cantrell does not matter; the only transaction to be scrutinized is the transaction between the Stinsons and Prestige. As Cantrell no longer has any interest in the truck, it must turn the title over to Prestige for processing with the Virginia Department of Motor Vehicles.

Under the second scenario, Cantrell retained ownership of the truck and allowed Prestige to sell the truck on its behalf. Assuming Cantrell could prove the elements of consignment under the Virginia Code, the Debtor asserts that Cantrell may have had a perfected security interest in the truck under Va. Code. Ann. § 8.9A-103(d), (g) and 8.9A-309(a). However, the Stinson's interest in the truck, as buyers in the ordinary course of Prestige's business, is superior to that of Cantrell's and Cantrell must turn over the title.

Under the last scenario, Cantrell may not have sold or allowed Prestige to sell the truck, but entrusted Prestige with the truck only to prepare it for sale and show to prospective purchasers. The Debtor asserts that under § 8.2-403 of the Virginia Code Cantrell acquiesced in its retention of possession of the truck to Prestige. Because Prestige was a merchant who dealt in goods similar to the truck at all times relevant to the motion, Prestige had power to transfer Cantrell's rights in the truck to a buyer in the ordinary course of business. Therefore, as the Stinsons are buyers in the ordinary course of business, they own the truck free and clear of any interest of Cantrell.

Counsel for Cantrell asserts that Cantrell is entitled to payment from the Stinsons for the vehicle or return of the truck. Counsel asserts that Article 2 does not apply to this situation, that title to the vehicle only passes through a certificate of title and that no sale can occur until actual title is transferred.

CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Orders to turn over property of the estate are "core" bankruptcy proceedings by virtue of 28 U.S.C. § 157(b)(2)(E). To be more precise on these points, it appears that this contested manner is one which is "related to" this bankruptcy case because its "'outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankrupt estate.'" *Spartan Mills v. Bank of America Illinois*, 112 F.3d 1251, 1255-56 (4th Cir. 1997) (quoting from *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)), *cert. denied*, 522 U.S. 969 (1997). The *Pacor* test had been adopted previously by the Fourth Circuit in *A.H. Robins*, 788 F.2d at 1002 at n. 11 (4th Cir. 1986). The parties by their pleadings filed in this matter have agreed that the Motion constitutes a **"**core**"** proceeding as involving property of the bankruptcy estate. While the Court has some doubt about this in light of the fact that the truck in question was sold by the Debtor pre-petition and therefore it would seem that the title to the truck is really a matter between the purchaser and Cantrell, it will treat their agreement that it is a "core" matter as their consent to entry of a final judgment in the matter as contemplated by Bankruptcy Rules 7008(a) and 7012(b). Under the facts presented here it is not of great practical consequence whether the dispute is "core" or "non-core" because the Court concludes that upon even findings of fact most favorable to Cantrell, the purchasers are entitled to delivery of the certificate of title. If that conclusion of law is wrong, Cantrell still has a right of appeal to the same District Court to which this Court would submit proposed findings of fact and conclusions

of law pursuant to Bankruptcy Rule 9033, but if Cantrell ultimately concludes after reviewing the Court's decision that it is correct, even if highly distasteful, that result very likely will have been obtained more quickly and at less expense to the parties than a submission pursuant to Rule 9033.

This Court has little, if any, doubt that Mr. Cantrell believed that his company was protected and not taking any credit risk when he advised Prestige's owner that he would not deliver the title to the Dodge truck unless and until he was paid the agreed purchase price. There certainly was good reason for him to believe that because Virginia law first and foremost looks to the certificate of title as evidence of one's ownership and right to sell a motor vehicle. The Supreme Court of Virginia has stated:

> In order to effect a transfer of the ownership of a motor vehicle, two things are required: (1) the owner must actually transfer the endorsed certificate of title to the transferee, and (2) the owner must deliver possession of the vehicle to the transferee.

*Allstate Insurance Co. v. Atlanta Casualty Co.*, 260 Va. 148, 155, 530 S.E.2d 161, 165 (2000), citing *Nationwide Mut. Ins. Co. v. Cole*, 203 Va. 337, 341, 124 S.E.2d 203, 206 (1962). This very language was quoted by this Court in its decision determining the adversary proceeding *Enterprise Leasing Co. of Norfolk/Richmond v. Mepco, Inc. (In re Mepco, Inc.)*, 276 B.R. 94, 102 (Bankr. W.D. Va. 2001). None of these cases, however, involved a contest between a purchaser without notice from a licensed motor vehicle dealer and a third party owner of a vehicle who had put such vehicle in the possession of such dealer. In addition to court decisions, Mr. Cantrell likely thought that he was protected by a provision of the Virginia Code which makes it illegal for any person to sell "a motor vehicle . . . without first having secured a certificate of title for it or without having in his possession a certificate of title for the vehicle

7

issued to its owner[.]" Va. Code § 46.2-617 (Repl Vol. 2005).  Furthermore, Virginia law prohibits anyone from purchasing a vehicle in the Commonwealth "knowing or having reason to believe that its seller does not legally have in its possession a certificate of title to the vehicle issued to its owner."  Va. Code § 46.2-616.

Despite these strict statutory provisions, however, the Uniform Commercial Code, as enacted in Virginia and other states as well, provides special protection to purchasers of "goods" from a "merchant" to the end that when one of two or more innocent parties who have dealt with a "merchant" must suffer a loss, it will not be the merchant's customer in the ordinary course of its business.  Va Code § 8.2-403(2) (Repl. Vol. 2001) provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business."  The very next sub-section of that statute, (3), provides a definition of "entrusting" as including "any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."  The term "goods" is defined by Va. Code § 8.2-105(1) to include "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8.8A) and things in action."  The term "merchant" includes a "person who deals in goods of the kind . . . involved in the transaction[.]"  Va. Code § 8.2-104(1) (Repl. Vol. 2001).  These statutes are general in nature and although certain types of sales are excluded, such as bulk sales of goods and "documents of title" under titles 8.6A and 8.7 of the Virginia Code, respectively,

motor vehicles clearly are not.  The Supreme Court of Virginia, although ruling in the case before it that § 8.2-403 was not applicable to a situation where a lien creditor had been omitted from a certificate of title for a motor vehicle sold by the vehicle's owner to a wholesaler, impliedly recognized that such statute does apply to sale of motor vehicles, saying that it "deals with the power of an owner with void or voidable title to pass good title to a *bona fide* purchaser for value."  *Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.*, 256 Va. 243, 248, 506 S.E.2d 14, 16 (1998).  In short, the Court made no suggestion that the statute did not apply because a motor vehicle title was at issue.  Although this Court has not located any Virginia authority applying this statute to a factual situation similar to the one presented here, its holding is consistent with the results reached by other state courts when confronted with comparable factual situations.  For example, a New Jersey court has ruled that the fact that a car owner and a dealer agreed that the owner would retain title to a vehicle and maintain insurance on it until receiving payment from the dealer did not preclude the bona fide purchaser from the dealer obtaining ownership of it even though the dealer failed to pay the owner.  The Court held that the owner's delivery of the vehicle to the dealer and acquiescence in the latter's retention of possession of it constituted an "entrustment" of such vehicle within the meaning of the Uniform Commercial Code section.  *Shannon v. Snedeker*, 192 N.J.Super. 366, 470 A.2d 25 (1983).  Similar cases holding that permitting a dealer to have physical possession of a vehicle empowered the dealer to pass good title to it to an innocent purchaser for value irrespective of agreements such as not to sell it until the dealer's check cleared the bank,[3]  or not to sell it

---

[3] *Sherman v. Roger Kresge, Inc.*, 67 Misc.2d 178, 323 N.Y.S.2d 804 (1971), aff'd 40 App. Div. 2d 766, 336 N.Y.S.2d 1015 (3d Dept. 1972).

without the owner's express authorization,[4] or that the owner would retain possession of the title until receiving payment,[5] are collected in § 3[a] of an annotation, *Sales: what is "entrusting" goods to merchant dealer under UCC § 2-403*, published at 59 A.L.R.4th 567 (1988).

To the extent that it is a question of law, the Court concludes that when Mr. Cantrell permitted a representative of Prestige, a licensed motor vehicle dealer with which his business had an existing relationship, to take possession of the Dodge truck, whether for the purpose of showing it to prospective purchasers or for the purpose of obtaining "floor plan" financing for it so that it could be added to its inventory of vehicles held for sale to retail customers, he "entrusted" that vehicle to Prestige within the meaning of Va. Code § 8.2-403. There being no dispute about the Stinsons being good faith purchasers for value from Prestige without notice or knowledge of the agreement between Cantrell and Prestige or that Prestige had not acquired title to the truck, those purchasers acquired good title superior to the rights of Cantrell. Accordingly, this Court will enter an order compelling Cantrell to deliver the title to the truck to or for the account of such purchasers subject only to the condition that such purchasers assign to Cantrell any rights they may have against Prestige with respect to their purchase of the Doge truck in question under the Virginia Vehicle Dealer Transaction Recovery Fund administered pursuant to Va. Code § 46.2-1527.1 upon a form prepared by Cantrell's counsel and in substance and form reasonably satisfactory to such purchasers or their counsel.

## **CONCLUSION**

---

[4] *Mattek v. Malofsky*, 42 Wis.2d 16, 165 N.W.2d 406 (1969).

[5] *Medico Leasing Co. v. Smith*, 457 P.2d 548 (Okla. 1969).

An order granting the Debtor's Motion in accordance with the provisions of this Memorandum Decision will be entered contemporaneously herewith.

This 3rd day of November, 2009.

_____
UNITED STATES BANKRUPTCY JUDGE